IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

MARK RUBINO,                                    *

     Plaintiff,                              *

                                               Civil Action No.: RDB-13-2651

         v.                                  *

NEW ACTON MOBILE INDUSTRIES,      *
LLC, et al.
     Defendants.                            *

*    *    *    *    *    *    *    *    *    *    *    *    *

## MEMORANDUM OPINION

This is an employment discrimination case in which the Plaintiff Mark Rubino alleges that Defendant New Acton Mobile Industries, LLC violated his rights under the Americans with Disabilities Act, 42 U.S.C. § 12112, *et seq.*, and that Defendant Kurt Walton assaulted and battered him. The Plaintiff also asserts a claim for intentional infliction of emotional distress against both Defendants. Presently pending are the Defendants' Motion to Dismiss Counts I, II & V of Plaintiff's First Amended Complaint (ECF No. 27) and the Plaintiff's Motion in the Alternative to File an Amended Complaint (ECF No. 28). The parties' submissions have been reviewed and no hearing is deemed necessary. *See* Local Rule 105.6 (D. Md. 2014). For the reasons that follow, the Defendants' Motion to Dismiss Counts I, II & V of Plaintiff's First Amended Complaint (ECF No. 27) is GRANTED IN PART and DENIED IN PART, specifically it is GRANTED with respect to Counts I & II and DENIED with respect to Count V, and the Plaintiff's Motion in the Alternative to File an Amended Complaint (ECF No. 28) is DENIED.

BACKGROUND

  This Court accepts as true the facts alleged in the Amended Complaint (ECF No. 25).
*See Aziz v. Alcolac, Inc.*, 658 F.3d 388, 390 (4th Cir. 2011).  The Plaintiff Mark Rubino is a
Virginia resident.  Am. Compl. ¶ 3.  Defendant New Acton Mobile Industries, LLC ("New
Acton") is a Maryland limited liability company.  *Id.* ¶ 4.  Defendant Kurt Walton, a
Maryland resident, is the Chief Executive Officer of New Acton.  *Id.* ¶ 5.  In October of
2011, New Acton hired Rubino as a Vice President of Sales.  *Id.* ¶ 7.  In approximately
January or February of 2012, Rubino informed the New Acton Human Resources Director
that he had a long history of depression.  *Id.* ¶ 9.  He stated that he had been hospitalized for
depression, was taking medication, and was undergoing psychotherapy.  *Id.*  He explained to
the Human Resources Director that "in order for him to perform his job, he needed to
receive the reasonable accommodation of not being publicly or privately yelled at, humiliated
or demeaned, or unnecessarily placed in stressful confrontational situations." *Id.* ¶ 10.  After
Rubino's meeting with the Human Resources Director, Defendant Walton's behavior
became more abusive.  *Id.* ¶ 11.  To Rubino, it appeared that Walton went out of his way to
involve Rubino in stressful, confrontational situations.  *Id.*

  In June of 2012, Rubino told Walton directly that he suffered from depression and
asked Walton to "avoid abusive or demeaning communications."  *Id.* ¶ 12.  Walton
responded that the workplace "needs more conflict," that he was "dedicated to creating
more conflict on the team," and "I have demons in my head." *Id.* ¶ 13.

  On July 31, 2012, the Plaintiff attended an off-site business meeting at a hotel.  *Id.* ¶
14.  He exited a meeting room and walked near a stairwell that overlooked the ground floor,

about twelve feet below. *Id.* At that moment, "Walton, who weighs over 300 pounds, charged Rubino in a violent fashion, stopping with his face inches from Rubino's face, repeatedly pointing and poking his finger at Rubino, making contact with Rubino's chest, and screaming loudly, 'Shake her fucking hand,' referring to New Acton Chief Financial Officer Ingrid West." *Id.* When Rubino asked Walton to calm down, stop screaming, and stop poking him, Walton blocked Rubino's path and backed him up against a wall. *Id.* ¶ 15. Rubino stated to Walton that he felt physically threatened and asked Walton to move away. *Id.* Walton screamed, "You're fired!" *Id.* Rubino then returned to the meeting room and shook Ms. West's hand. *Id.* ¶ 16. The next day, he received a letter confirming that he had been terminated. *Id.*

Rubino filed a charge of discrimination with the Equal Employment Opportunity Commission. The EEOC issued him a right to sue letter on June 25, 2013, exhausting his administrative remedies. *Id.* ¶ 17.

The Plaintiff originally filed suit in the Circuit Court for Baltimore City, Maryland. The Defendants removed the case to this Court. *See* 28 U.S.C. §§ 1331, 1367, 1441 & 1446. The Defendants moved to dismiss Counts I, II & III of the original Complaint as against New Acton for failure to state a claim upon which relief can be granted. The Defendants also moved to dismiss Counts I, II & II as against Walton on the basis that there is no individual liability under the ADA. *Baird ex rel. Baird v. Rose*, 192 F.3d 462, 472 (4th Cir. 1999). The Plaintiff then filed an Amended Complaint (ECF No. 25) with additional factual allegations, asserting ADA claims against New Acton for refusal to accommodate (Count I), disability discrimination (Count II), and retaliation (Count III), and a Maryland common law

assault and battery claim against both Defendants (Count IV).   The Plaintiff removed

Walton as a Defendant as to the ADA claims in the Amended Complaint, and also added a

Maryland common law claim for intentional infliction of emotional distress against both

Defendants (Count V).   Therefore, the Defendants' Motion to Dismiss Counts I, II & III of

the original Complaint (ECF No. 15) is MOOT.   The Defendants then filed the pending

Motion to Dismiss Counts I, II & V of Plaintiff's First Amended Complaint (ECF No. 27).

The Defendants do not move to dismiss Counts III & IV.

<u>STANDARD OF REVIEW</u>

I.     <u>Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted</u>

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a "short and

plain statement of the claim showing that the pleader is entitled to relief."   Rule 12(b)(6) of

the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state

a claim upon which relief can be granted; therefore, "the purpose of Rule 12(b)(6) is to test

the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits

of a claim, or the applicability of defenses."   *Presley v. City of Charlottesville*, 464 F.3d 480, 483

(4th Cir. 2006) (internal quotation marks and alterations omitted) (quoting *Edwards v. City of*

*Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999))).   When ruling on such a motion, the court must

"accept the well-pled allegations of the complaint as true," and "construe the facts and

reasonable inferences derived therefrom in the light most favorable to the plaintiff."   *Ibarra v.*

*United States*, 120 F.3d 472, 474 (4th Cir. 1997).   However, this Court "need not accept the

legal conclusions drawn from the facts, and [this Court] need not accept as true unwarranted

inferences,   unreasonable   conclusions   or   arguments."   *Nemet   Chevrolet,   Ltd.   v.*

*Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009) (internal quotation marks and citation omitted).

The Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "require that complaints in civil actions be alleged with greater specificity than previously was required." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  In *Twombly*, the Supreme Court articulated "[t]wo working principles" that courts must employ when ruling on Rule 12(b)(6) motions to dismiss.  *Iqbal*, 556 U.S. at 678.  First, while a court must accept as true all the factual allegations contained in the complaint, legal conclusions drawn from those facts are not afforded such deference. *Id.*; *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) ("The mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." (citing *Iqbal*, 556 U.S. at 678.)).

Second, a complaint must be dismissed if it does not allege "a plausible claim for relief."  *Iqbal*, 556 U.S. at 679.  Under the plausibility standard, a complaint must contain "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action."  *Twombly*, 550 U.S. at 555.  Although the plausibility requirement does not impose a "probability requirement," *id.* at 556, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678; *see also Robertson v. Sea Pines Real Estate Cos.*, 679 F.3d 278, 291 (4th Cir. 2012) ("A complaint need not make a case against a defendant or *forecast evidence* sufficient to *prove* an element of the claim.  It need only *allege facts* sufficient to *state* elements of the claim." (emphasis in original) (internal quotation

marks and citation omitted)).  In short, a court must "draw on its judicial experience and common sense" to determine whether the pleader has "nudged his claim across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 679, 683 (citations, internal quotation marks, and alterations omitted).

II.    <u>Motion for Leave to File an Amended Complaint</u>

A plaintiff may amend his or her complaint "once as a matter of course within . . . 21 days after the service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1).  After such time has elapsed or in the case of subsequent amendments, "a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2).  Rule 15(a) requires that leave "shall be freely given when justice so requires." *Id.*  In *Foman v. Davis*, 371 U.S. 178 (1962), the Supreme Court of the United States enumerated certain factors to guide federal district courts in making a determination with respect to granting leave to amend a complaint.  The Court noted that, "[i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive . . . undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be 'freely given.'" *Id.* at 182.

The United States Court of Appeals for the Fourth Circuit has held that Rule 15 "gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).  The court also held that "leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the

moving party, or the amendment would have been futile." *Id.* at 427; *see also Sciolino v. City of Newport News*, 480 F.3d 642, 651 (4th Cir. 2007).

DISCUSSION

The Plaintiff has failed to state a claim under the Americans with Disabilities Act in either Count I or Count II, however, he has stated a claim for intentional infliction of emotional distress in Count V. His request for leave to file a Second Amended Complaint will be denied.

**A.  ADA Claims – Counts I & II**

The Defendants argue that the Plaintiff's claims for refusal to accommodate in Count I and disability discrimination in Count II against New Acton must be dismissed because Rubino has not pled a *prima facie* case as to either claim.

As a threshold matter in an ADA claim, a plaintiff must show that he or she is a qualified individual with a disability. A qualified individual with a disability is "an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds." 42 U.S.C. § 12111(8). As this Court has previously held, to establish that he is a qualified individual, the Plaintiff must prove that (a) he was disabled when discharged and (b) he was qualified to perform the essential functions of his position. *Id.*; *Munoz v. Balt. Cnty.*, No. RDB-11-2693, 2012 WL 3038602, at *7 (D. Md. July 25, 2012).

In this case, Rubino pleads no factual content as to the requirements of the job or his qualifications. He merely alleges in conclusory fashion that he is "capable of performing the essential functions of his job with a reasonable accommodation." Am. Compl. at ¶ 20. This

7

is merely a legal conclusion that is couched as an allegation of fact.  His allegation regarding this threshold requirement of any ADA claim is a threadbare recital of an element of a cause of action that is insufficient to state a claim under Rule 12(b)(6).  This Court is not making a factual finding, but merely holds that the Plaintiff has not met the pleading standard that governs all federal lawsuits.[1]  Accordingly, Counts I & II are subject to dismissal.

Additionally, apart from his failure to show that he is a qualified individual with a disability, the Plaintiff has failed to plead another element of a *prima facie* case of refusal to accommodate in Count I.  A *prima facie* refusal to accommodate case requires a plaintiff to show "(1) that he was an individual who had a disability within the meaning of the statute; (2) that the employer had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the employer refused to make such accommodations."  *Rhoads v. FDIC*, 257 F.3d 373, 387 (4th Cir. 2001).  "Essential functions" are "the fundamental job duties of the employment position."  29 C.F.R. § 1630.2(n)(1).

In this case, Rubino has not adequately pled that he could perform the essential functions of his job.  He states that he was a Vice President of Sales at New Acton.  However, the only allegations related in any way to his employment position are that:  "in order for him to perform his job, he needed to receive [a] reasonable accommodation"; "in another effort to obtain an accommodation that could allow him to successfully perform his

---

[1] Contrary to the Plaintiff's argument, this Court's decision in *Munoz v. Balt. Cnty.*, No. RDB-11-2693, 2012 WL 3038602 (D. Md. July 25, 2012), did not impose higher pleading requirements than the familiar standard set forth in *Twombly* and *Iqbal*.  The Plaintiff also places great emphasis on the fact that *Munoz* is unpublished.  However, this is of no moment; this Court cites the *Munoz* decision because its reasoning applies to this factually similar case, and not for any precedential value.  The cases that bind this Court, namely *Twombly* and *Iqbal*, mandate the same result—dismissal.

job . . . [he] asked for [a] reasonable accommodation . . . ."; and that he is "capable of performing the essential functions of his job with a reasonable accommodation." Am. Compl. ¶¶ 10, 12 & 21. It is not possible to tell from the Amended Complaint what the Plaintiff's job involves. Without even a cursory description of what kind of work the Plaintiff does, he has simply recited the elements of the cause of action. As such, he has failed to meet the plausibility standard announced in *Twombly* and *Iqbal* as to his refusal to accommodate claim.

Furthermore, in addition to his failure to show that he is a qualified individual with a disability, the Plaintiff has failed to adequately plead another element of a disability discrimination claim in Count II. To make a *prima facie* case of disability discrimination under the Americans with Disabilities Act, a plaintiff must demonstrate that (1) he was subject to an adverse employment action, (2) he was a qualified individual with a disability under the ADA, (3) his performance at the time of the discharge met the legitimate expectations of his employer, and (4) "his discharge occurred under circumstances that raise a reasonable inference of unlawful discrimination." *Haulbrook v. Michelin N. Am.*, 252 F.3d 696, 702 (4th Cir. 2001). The "legitimate expectations" factor is distinct from the inquiry into the "essential functions of a job." *See Ennis*, 53 F.3d 55, 61-62. "It is the perception of the decision maker which is relevant, not the self-assessment of the plaintiff." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960-61 (4th Cir. 1996); *King v. Rumsfeld*, 328 F.3d 145, 149 (4th Cir. 2003) (quoting *Evans*); *DeJarnette v. Corning, Inc.*, 133 F.3d 293, 299 (4th Cir. 1998) (same).

Rubino fails to plead any facts that could plausibly lead to the inference that he met his employer's legitimate expectations at the time he was terminated.  He makes no allegation whatsoever about his job performance or whether New Acton considered him a satisfactory employee.  He has thus failed to plead, even in conclusory fashion, an element of a disability discrimination claim.  This deficiency is likewise fatal to his claim against New Acton in Count II.  Accordingly, the Defendants' Motion to Dismiss will be granted as to Counts I & II.

### B.  Count V – Intentional Infliction of Emotional Distress

Finally, the Defendants move for dismissal of Count V claiming intentional infliction of emotional distress against Walton.  To state a prima facie case of intentional infliction of emotional distress, a plaintiff must allege facts showing that:  (1) the conduct in question was intentional or reckless; (2) the conduct was extreme and outrageous; (3) there was a causal connection between the conduct and the emotional distress; and (4) the emotional distress was severe.  *Harris v. Jones*, 380 A.2d 611, 614 (Md. 1977); *Arbabi v. Fred Meyers, Inc.*, 205 F. Supp. 2d 462, 466 (D. Md. 2002).  The Defendants argue that Rubino has not met his burden to plead facts that show extreme and outrageous conduct or that his emotional distress was severe.

The Plaintiff has adequately alleged extreme and outrageous conduct.  "In evaluating whether the identified conduct is extreme and outrageous, courts should consider multiple factors, including the context in which the conduct occurred, the personality of the plaintiff and [his or] her susceptibility to emotional distress, and the relationship between the defendant and plaintiff."  *Mathis v. Goldberg*, No. DKC 12-1777, 2013 WL 524708, at *10 (D.

Md. Feb. 12, 2013), *aff'd*, 13-1455, 2013 WL 4504857 (4th Cir. Aug. 26, 2013).  In particular, "[i]n cases where the defendant is in a peculiar position to harass the plaintiff, and cause emotional distress, his conduct will be carefully scrutinized by the courts." *Harris*, 380 A.2d at 616 ("[T]he extreme and outrageous character of the defendant's conduct may arise from his abuse of a position, or relation with another person, which gives him actual or apparent authority over him, or power to affect his interests." (citing Restatement (Second) of Torts § 46 comment e (1965)).

Walton was the Chief Executive Officer of New Acton, a position of actual authority over Rubino.  After the Plaintiff asked the Human Resources department to shield him from confrontational situations, Walton's behavior allegedly worsened.  When Rubino asked Walton directly to stop his abusive behavior, Walton flatly refused.  Then, at the business meeting at the hotel on July 31, 2012, Walton is alleged to have violently approached the Plaintiff, yelled curse words in his face, poked him in the chest, backed him up against the wall, and loudly fired him.  At this stage of the case, these allegations of extreme and outrageous conduct are sufficient to state a claim.  *See Mathis*, 2013 WL 524708, at *10 ("[A]t the pleading stage, a plaintiff need only allege conduct that a reasonable juror might deem extreme or outrageous.").

The Plaintiff has also adequately alleged that he suffered from severe emotional distress.  He states that his "inability to sleep, inability to concentrate, inability to communicate or interact with others, inability to perform manual tasks, inability to have normal sexual relations, [and] inability to have normal bowel functions" left him "unable to function for several months."  Am. Compl. ¶¶ 9, 51.  There is no allegation that he was able

to work or otherwise lead a normal life after being terminated from New Acton. *See Takacs v. Fiore*, 473 F. Supp. 2d 647, 652 (D. Md. 2007) (holding that plaintiff failed to plead severe emotional distress where she continued working despite depression, sleeplessness, headaches, and abdominal sickness).   Thus, Rubino has sufficiently pled his claim for intentional infliction of emotional distress.   Accordingly, the Defendants' Motion will be denied as to Count V.

### C.  Motion to File a Second Amended Complaint

In the Plaintiff's Response in Opposition to the Defendants' Motion to Dismiss the Amended Complaint, he requests "in the alternative, should this Court deem that Plaintiff's factual allegations are insufficient, Plaintiff hereby moves for leave to amend his Complaint." (ECF No. 28.)   Although Rule 15(a) requires that a court should give leave to amend freely as justice so requires, leave may be denied if granting it would result in undue delay and prejudice to the opposing party. *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006).

In this case, granting the Plaintiff's request would unduly delay the proceedings to the prejudice of the Defendants.   The Plaintiff already amended his Complaint after the Defendants moved to dismiss Counts I, II & III of the original Complaint on the grounds that the Plaintiff failed to adequately plead that he was a qualified individual with a disability, and that he failed to plead facts showing that he could perform the essential functions of his job.   In the Amended Complaint, the Plaintiff augmented some of his factual allegations as to Counts I & II, however, he did not allege facts regarding the essential functions of his job. Instead, he cited cases for the proposition that he need not allege facts to support this element of a *prima facie* case.   Moreover, Rubino added no allegations concerning whether he

12

met his employer's legitimate performance expectations.   Now that the Defendants have identified further reasons why Rubino has failed to state a claim in Counts I & II, he seeks to amend a second time.   Plaintiff's request to amend Counts I & II again will only further delay this case.   Indeed, it would be unfair to allow the Plaintiff to again correct his pleading deficiencies only after the Defendants have expended more time, energy, and money in pointing them out for him.   Because further amendment would prejudice the Defendants, the Plaintiff's request for leave to file a Second Amended Complaint will be denied.

<u>CONCLUSION</u>

For the reasons stated above, the Defendants' Motion to Dismiss (ECF No. 27) is GRANTED IN PART and DENIED IN PART, specifically it is GRANTED as to Counts I & II and DENIED as to Count V, and the Plaintiff's Motion in the Alternative to File an Amended Complaint (ECF No. 28) is DENIED.

A separate Order follows.


Dated:  August 27, 2014                                    _____/s/_____
                                                                          Richard D. Bennett
                                                                          United States District Judge